# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CP-01139-COA

**EFFORT ALEXANDER**                                                      **APPELLANT**

**v.**

**CHARLYS ESPINOZA**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/2023 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EFFORT ALEXANDER (PRO SE) |
| ATTORNEY FOR APPELLEE: | JOSEPH M. SPARKMAN JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | APPEAL DISMISSED - 08/13/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT**:

¶1.     Effort Alexander contracted with Charlys Espinoza and his Tennessee company C&A Construction LLC (collectively, "Espinoza") to frame a home Alexander was building in DeSoto County, Mississippi.  When a dispute arose, Alexander terminated the contract, and Espinoza filed a mechanic's lien on the property for $6,200, the amount he claimed Alexander owed him.

¶2.     Alexander sued Espinoza in the DeSoto County Chancery Court, and Espinoza filed a counter-claim.  In a second suit, Alexander filed a motion for declaratory judgment, claiming that Espinoza's lien was invalid because Espinoza was not licensed in Mississippi. The chancery court ultimately denied the motion, assessed attorney's fees against Alexander, and transferred the case to the chancellor handling Alexander's first lawsuit.  Alexander

appeals from the order denying declaratory relief. Having reviewed the record and considered the arguments of the parties, we find that the chancery court's order was not a final judgment; therefore, we dismiss Alexander's appeal for lack of jurisdiction.

**Facts**

¶3. Alexander, a resident of Memphis, Tennessee, decided to build a home on property he owned in Southaven, Mississippi. On November 12, 2021, he contracted with Espinoza, who owned C&A Construction LLC (a sole proprietorship located in Tennessee), to do the framing work.[1] The parties agreed on a contract price of $37,120, which would be paid upon completion of the work.

¶4. On November 28, 2022, after allegedly paying Espinoza $33,020, Alexander terminated the contract. In a letter he sent to Espinoza that day, Alexander said that Espinoza had allowed or was responsible for the theft of building materials that had been delivered to the gated job site during working hours. Because of this alleged theft, Alexander said he had to replace the stolen material with lesser quality material.[2]

¶5. About a month later, on December 20, 2022, Espinoza filed a mechanic's lien on the property, claiming Alexander owed him $6,200.

¶6. On December 29, 2022, Espinoza sent a copy of the mechanic's lien to Alexander's

---

[1] This project included work on the lower level, main floor, carport, screened porch, rear balcony and deck, front porch, and an addition to the house.

[2] As added grounds for the termination, Alexander said that there was so much unfinished framing work that the balance of the contract price was not sufficient to cover the cost of another company finishing the work. Alexander said he based his allegations on the advice of Matthew Thompson, a licensed construction contractor and architect.

bank in Southaven (Guaranty Bank). Espinoza told the bank that he had completed the framing of the home and that he had to file the lien on the property because Alexander refused to pay him according to their agreement.[3]

¶7.     According to Alexander, Guaranty Bank cut off Alexander's funding for the project when the bank received Espinoza's letter and the mechanic's lien.

*First Lawsuit*

¶8.     On January 27, 2023, Alexander sued Espinoza in the DeSoto County Chancery Court. The pro se complaint, entitled "Complaint to Remove Lien and Award Damages Penalty," was assigned cause number 23-cv-167. The docket for that cause number is not included in our record; however, several of the pleadings are in the record.[4] In the complaint, Alexander alleged that he had terminated his contract with Espinoza and that he had paid Espinoza in full. Alexander further alleged that Espinoza had filed a mechanic's lien, which Alexander characterized as "fraudulent" because he did not owe Espinoza anything. Alexander further alleged that Espinoza sent a copy of the mechanic's lien to Guaranty Bank along with other alleged "misinformation." Alexander claimed that he was entitled to damages because the bank cut off his funding due to Espinoza's letter and lien.

¶9.     Espinoza filed a motion for a more definite statement and then filed a "Counter-

_____

[3] Espinoza told the bank that the framing of the structure was complete and ready for code inspection, and all that remained to be done was to install three windows. The window installation was not completed, Espinoza said, because Alexander had ordered the wrong size windows and had added an additional room beyond the contract's terms.

[4] When Alexander designated the record for appeal purposes, he included selected pleadings from the first and the second cases he filed.

3

Complaint" on April 18, 2023. In it, Espinoza alleged that during the construction process, Espinoza purchased materials and performed additional work on changes/additions to the contract that Alexander requested. When Alexander terminated the contract and refused to pay for these materials, Espinoza filed a mechanic's lien. Because of Alexander's alleged breach of the agreement, Espinoza sought a judgment of $6,200, judicial foreclosure to satisfy the lien, and attorney's fees. On May 5, 2023, Alexander denied Espinoza's allegations in response to the counter-complaint.

¶10. On May 31, 2023, Espinoza filed a motion to dismiss Alexander's complaint, alleging insufficient service of process. On June 16, 2023, the chancery court held a hearing on the motion and dismissed Alexander's claim without prejudice. The court made no ruling on Espinoza's counter-claim, and on July 12, 2023, Espinoza moved to schedule a trial on that claim.

*Second Lawsuit*

¶11. On June 27, 2023, Alexander filed a second complaint against Espinoza in the DeSoto County Chancery Court, entitled "Complaint to Remove Lien and Award Damages Penalty," which was docketed as cause number 23-cv-1120. In the pro se complaint, Alexander claimed Espinoza failed to complete the framing work,[5] and Alexander alleged Espinoza had filed an "illegal, invalid, fraudulent and grievously false lien" on Alexander's property.

---

[5] Alexander stated that the soffits and facia were not completed, nor was the home's interior stairway finished. He alleged that all the windows were not installed, nor was the "Hardie Panel" siding on the home completed. Alexander pleaded that a June 26, 2023 inspection by the "City of Southhaven Building Department" had determined the work was incomplete and inadequate.

4

Alexander claimed that Mississippi allows only licensed residential contractors to file mechanic's liens, and Espinoza was not licensed.[6] Alexander also alleged that Espinoza had mailed his invalid lien to Alexander's bank in an attempt to extort $6,200 from Alexander. In his request for relief, Alexander contended that Espinoza's filing an invalid mechanic's lien was a felonious act, that Espinoza illegally interrupted Alexander's possession and peaceful use of his property by filing the lien, and that Espinoza "denied Plaintiff his right to an unclouded property title." Alexander asked that the court strike Espinoza's invalid lien and award Alexander $18,600, the statutory penalty for filing a false lien authorized under Mississippi Code Annotated section 85-7-429 (Rev. 2021),[7] and damages for his loss of peaceful use and the cloud on his title.

¶12. According to the docket for cause 23-cv-1120, which is included in our record, Espinoza filed an answer to this complaint on August 1, 2023. However, a copy of the pleading was not included in the record.

¶13. On August 11, 2023, Alexander filed a "Motion to Pass Declaratory Judgement" pursuant to Rule 57(b)(1) of the Mississippi Code of Civil Procedure, asking the court to "conclude that Defendant's lien is invalid under the law of the State of Mississippi."

---

[6] Alexander learned that Espinoza was not licensed in his (Alexander's) communications with the Mississippi Board of Contractors on June 23, 2023.

[7] Section 85-7-429(1) (Supp. 2014) provides:

(1) Any person who shall falsely and knowingly file the claim of lien provided in this article without just cause shall be liable to every party injured thereby for a penalty equal to three (3) times the full amount for which the claim was filed, to be recovered in an action by any party so injured at any time within one hundred eighty (180) days from the filing of the claim of lien.

Alexander contended that Mississippi Code Annotated section 73-59-9 (Rev. 2022) requires that "residential builders" be licensed and that any action, including a lien, brought by an unlicensed builder be dismissed.[8]

¶14.    Thereafter, on September 22, 2023, Alexander filed a motion for summary judgment,

---

[8]  Section 73-59-9 reads:

(1) Any person or entity required to have a license under Section 73-59-3(1) who undertakes or attempts to undertake the business of residential construction or improvement without having a valid license as required by this chapter, or who knowingly presents to the board, or files with the board, false information for the purpose of obtaining such license, shall be deemed guilty of a misdemeanor and, upon conviction, shall be fined not less than One Hundred Dollars ($100.00) and not more than Five Thousand Dollars ($5,000.00) or be imprisoned for not less than thirty (30) nor more than sixty (60) days in the county jail, or both.

(2) Any person or entity required to have a license under Section 73-59-3(1) who does not have the license provided by this chapter at the time construction, building or remodeling services are rendered may not bring any action, either at law or in equity, to enforce any contract for residential building or remodeling or to enforce a sales contract, but instead shall be only permitted to recover as damages actual documented expenses for labor, materials or both, incurred as a result of the construction, building or remodeling services rendered, but only for those expenses which can be shown by clear and convincing evidence.

(3) The board shall have the authority to issue a citation and may stop work of a residential builder or remodeler performing work without having a valid license as required by this chapter.

However, Mississippi Code Annotated section 73-59-1(b) (Rev. 2022) defines a "residential builder" as "any corporation, partnership or individual who constructs a building or structure for sale for use by another as a residence or who, for a fixed price, commission, fee, wage or other compensation, undertakes or offers to undertake the construction, or superintending of the construction, of any building or structure which is not more than three (3) floors in height, to be used by another as a residence, *when the total cost of the undertaking exceeds Fifty Thousand Dollars ($50,000.00)*."  (Emphasis added).

6

making the same arguments he made in his motion for declaratory judgment. Alexander initially noticed his summary judgment motion for a hearing to be held that same day, September 22, 2023. On September 25, 2023, Espinoza filed a motion to quash the notice because the setting did not give him the ten days' notice he was entitled to under Rule 56(c) of the Mississippi Rules of Civil Procedure. Alexander then re-noticed his summary judgment motion for a hearing on October 2, 2023.

¶15. On September 28, 2023, Alexander noticed his motion for a declaratory judgment for a hearing on October 2, 2023 as well. On October 2, 2023, the parties appeared before the chancery court, but no transcript of the argument is in the record. From the briefs filed and the introductory language in the court's order, it appears Alexander told the court that he elected to forego a hearing on the motion for summary judgment, and Espinoza's attorney waived any challenge to Alexander's failure to timely notice the motion for a declaratory judgment. The court proceeded to hear arguments on only the declaratory judgment motion.

¶16. The next day, the chancery court signed an order denying the motion for a declaratory judgment, and the order was entered on October 5, 2023. The court found the motion was "without substantial justification" and was "frivolous and groundless in fact and law." The court concluded that Alexander "was unable to present even an arguable basis" for the motion, that "bringing the motion on for hearing unnecessarily expanded the proceedings," and that Alexander "clearly knew or reasonably should have known that his claim was without substantial justification." The chancery court further noted that Alexander had failed to properly strike his notice for hearing on the summary judgment motion or notice his

motion for a declaratory judgment. The court held that Alexander did not prevail on any issue and that "no new theory of law " was presented. In addition to denying this motion, the court entered an order awarding Espinoza $1,500 for attorney's fees and costs.[9] The order did not certify that there was "no just reason for delay" or direct that the order be entered as a final judgment against any party or on any claim. M.R.C.P 54(b).

*Post-Order Proceedings*

¶17. On October 10, 2023, the chancellor entered a separate order sua sponte, finding that the facts of the current action (23-cv-1120) were the same as those pleaded in Alexander's previously filed action (23-cv-167). The chancellor transferred the case to the docket of the chancellor handling that case.

¶18. The docket for cause number 23-cv-1120 shows that after the court's order, on October 11, 2023, Alexander filed another motion for a declaratory judgment, but that pleading is not in our record.[10] In his brief, Espinoza claims that Alexander also filed another motion for summary judgment in cause number 23-cv-1120 on February 22, 2024.[11] In addition, as noted earlier, Espinoza filed a motion for a trial setting on the counter-claim he had filed in cause number 23-cv-167. Thus, it appears there were several issues between

---

[9] The docket does not reflect that Espinoza filed a written motion for sanctions, and without the transcript, it is unclear whether an oral motion was presented during the hearing or whether the chancery court imposed sanctions sua sponte.

[10] Because we do not have the docket of cause number 23-cv-167, we do not know whether Alexander's motion was considered by the transferee chancellor in that case.

[11] However, that pleading is not in the record, and the docket Espinoza included in his record excerpts merely refers to a "Motion (Miscellaneous)" filed on that date without further description or identification of the filing party.

8

the parties that needed resolution even after the order on the declaratory judgment motion had been rendered.

*Appeal of October 5, 2023 Order Denying Motion for Declaratory Judgment*
*in Cause Number 23-cv-1120*

¶19. On October 16, 2023, Alexander filed his notice of appeal from the October 5, 2023 order denying declaratory relief and awarding attorney's fees in cause number 23-cv-1120. On appeal, Alexander argues that the chancery court erred in denying his motion for a declaratory judgment because Espinoza had filed an invalid lien and that nothing in Espinoza's motion warranted the payment of attorney's fees. In response, Espinoza argues that this Court has no jurisdiction over the appeal because the chancery court's order denying declaratory relief was not a final judgment, and Alexander sought no permission to file an interlocutory appeal. In the alternative, Espinoza contends that the chancery court correctly denied the motion for a declaratory judgment and correctly imposed sanctions under Rule 11 of the Mississippi Rules of Civil Procedure.

**Discussion**

¶20. There are critical parts of the record that the parties did not designate to be included, among them Espinoza's answer to Alexander's complaint in cause no. 23-cv-1120, as well as the transcript of the chancery court's hearing on Alexander's motion for a declaratory judgment. However, because the chancery court transferred the case, which consolidated it with Alexander's first case, the October 5, 2023 order was not a final, appealable judgment, and the appeal must be dismissed for lack of appellate jurisdiction.

¶21. Mississippi Code Annotated section 9-3-9 (Rev. 2019) provides, among other things,

9

that cases shall not be "removed," i.e. appealed, "until after final judgment in the court below."[12] The need for the judgment appealed to be final before this Court has jurisdiction has been incorporated into the Mississippi Rules of Civil Procedure and repeatedly reiterated in appellate decisions. *See* M.R.C.P. 54(b). For example, we recently stated that "[a]n appeal may be taken only from a final judgment," which is one that "adjudicates the merits of the controversy and settles all issues between all parties." *Blaney v. Black Jack Oil Co.*, 325 So. 3d 1204, 1206 (¶8) (Miss. Ct. App. 2021) (citing *LaFontaine v. Holliday*, 110 So. 3d 785, 787 (¶8) (Miss. 2013)); *accord* Miss. Code Ann. § 11-51-3 (Rev. 2019). An appellate court, on its own initiative, may dismiss an appeal if a judgment does not meet the requisites of Rule 54(b). *Miller v. R.B. Wall Oil Co.*, 850 So. 2d 101, 103 (¶5) (Miss. Ct. App. 2002).

¶22. Rule 54 of the Mississippi Rules of Civil Procedure sets out when, in a case of multiple parties or multiple claims, a judgment is final and when partial judgments may

---

[12] The full text of section 9-3-9 reads:

The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals, and shall hear and determine all manner of pleas, complaints, motions, causes, and controversies, civil and criminal, which are now pending therein, or which may be brought before it, and which shall be cognizable in said court; but a cause shall not be removed into said court until after final judgment in the court below, except as provided by Section 9-4-3, or in cases particularly provided for by law; and the Supreme Court may grant new trials and correct errors of the circuit court in granting or refusing the same.

Provided, however, the Supreme Court shall have such original and appellate jurisdiction as may be otherwise provided by law in cases and proceedings for modification of any rates charged or sought to be charged to the public by any public utility.

nonetheless be appealed:

> When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

M.R.C.P. 54(b). The Rule is clear that when an order of the trial court adjudicates fewer than all the claims between the parties, it is an interlocutory order that may only be appealed if the trial court expressly states that there is no just reason for delay and directs the entry of a final judgment. The advisory committee notes to the Rule state, "[a]bsent a certification under Rule 54(b), any order in a multiple-party or multiple-claim action that does not dispose of the entire action is interlocutory, even it if appears to adjudicate a separable portion of the controversy." M.R.C.P. 54(b) advisory committee notes.

¶23. The Mississippi Supreme Court has held:

> Without the entry of a Rule 54(b) certificate, a trial court order which disposes of less than all of the claims against all of the parties in a multiple party or multiple claim action, is interlocutory.

*Taylor v. Tolbert*, 324 So. 3d 763, 766 (¶13) (Miss. 2021) (quoting *M.W.F. v. D.D.F.*, 926 So. 2d 897, 900 (¶4) (Miss. 2006)). The avenue to appeal from an interlocutory order is for a party to seek permission from the Mississippi Supreme Court under Rule 5 of the Mississippi Rules of Appellate Procedure, which provides in part:

11

(a) Petition for Permission to Appeal. An appeal from an interlocutory order may be sought if a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may:
> (1) Materially advance the termination of the litigation and avoid exceptional expense to the parties; or
> (2) Protect a party from substantial and irreparable injury; or
> (3) Resolve an issue of general importance in the administration of justice.

¶24. In this case, the court's order denying the motion for a declaratory judgment did not resolve all of the claims between the parties as Rule 54(b) requires. The chancery court itself noted that Espinoza had an outstanding counter-claim against Alexander and sua sponte transferred cause number 23-cv-1120 to consolidate it with cause number 23-cv-167 for final resolution. If a trial court's order does not dispose of all the claims against all the parties and was not certified as a final judgment under Rule 54(b), the order is interlocutory and not final. *Meekins v. Kennon*, 141 So. 3d 51, 53 (¶7) (Miss. Ct. App. 2014).

¶25. In addition, Alexander sought not only a declaratory judgment that Espinoza's mechanic's lien was invalid, but also the statutory damages he claimed he was entitled to for Espinoza's allegedly fraudulent filing of a lien, as well as damages for the interrupted loss of his possession and the cloud the lien placed on his title. The chancery court only ruled on the declaratory relief claim, not the others. Further, Alexander's own actions of filing additional motions after the October 5, 2023 order show that he treated the chancery court's order as not final.

¶26. We also note that the chancery court's order did not include the certification language required under Rule 54(b) for an interlocutory order to be appealable. "Without the entry of a Rule 54(b) certificate, a trial court order which disposes of less than all of the claims

12

against all of the parties in a multiple party or multiple claim action, is interlocutory." *Taylor*, 324 So. 3d at 766 (¶13). Here, the chancery court simply denied the motion for a declaratory judgment and entered a judgment in favor of Espinoza for attorney's fees. The order contains no finding that "there is no just reason for delay," nor did the chancery court expressly direct the entry of the judgment as a final judgment and use the specific and express language required by Mississippi Rule of Civil Procedure 54(b). If the chancery court intended the order to be final, the court did not state so "in a definite, unmistakable manner" that the Mississippi Supreme Court requires. *M.W.F.,* 926 So. 2d at 900 (¶5).

¶27. Finally, Alexander did not seek permission from the Mississippi Supreme Court under Mississippi Rule of Appellate Procedure 5 to appeal from the chancery court's interlocutory order.

**Conclusion**

¶28. The order appealed from in this case was not a final judgment because it did not resolve all the claims between all the parties, nor did it contain the proper certification language to make it appealable. Alexander also did not seek permission from the Mississippi Supreme Court to file an interlocutory appeal. Accordingly, this Court lacks jurisdiction to adjudicate the issues Alexander raises on appeal, and the appeal must be dismissed for lack of jurisdiction.

¶29. **APPEAL DISMISSED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**